AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

**FILED**
February 06, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ____Fidel Morales____
DEPUTY

| United States of America | ) |
|---|---|
| v. | ) |
| Hector Adrian PENA | ) Case No. |
| | ) |
| | ) **EP:24-M-00528-MAT** |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 5, 2024__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 554(a) | Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, to-wit: approximately 16,400 rounds of ammunition. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

Complaint sworn to telephonically on __February 06, 2024__ at __02:00 PM__ and signed electronically. **FED.R.CRIM.P. 4.1(b)(2)(A)**

_____
*Complainant's signature*

Gabrielle Moore, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/06/2024__

_____
*Judge's signature*

City and state: __El Paso, Texas__   Miguel A. Torres, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

Your affiant makes this affidavit based on her knowledge as well as information provided by other law enforcement officers. Your affiant has not included each and every fact known concerning this investigation. You affiant has set forth only the facts necessary to establish probable cause for the arrest of Hector Adrian PENA.

On February 5, 2024, United States (U.S.) Customs and Border Protection Officers (CBPOs) were conducting outbound inspection operations at the Ysleta Port of Entry (POE) in El Paso, Texas. On February 5, 2024, at approximately 1:35 p.m., a CBPO selected a red Chrysler Town and Country bearing Mexican license plates for inspection, as the vehicle attempted to depart the U.S. to Mexico. The CBPO asked the driver and sole occupant of the vehicle, Hector Adrian PENA ("PENA"), where he was headed, and PENA replied he was headed home to Ciudad Juarez after buying a television in the U.S. PENA declared $200 in currency and provided a negative declaration for firearms and ammunition. PENA stated he had borrowed the vehicle from his aunt.

A second CBPO began inspecting the interior of the vehicle and discovered the carpet of the vehicle had been lifted from the trim. The CBPO lifted the carpet and observed a sheet of metal that had been bolted to the floor. The CBPO lifted the sheet of metal and observed boxes of ammunition. Further inspection of the vehicle resulted in the discovery of approximately sixteen thousand one hundred (16,100) rounds of 7.62x39mm ammunition, three hundred (300) rounds of .338 caliber ammunition, and two thousand (2,000) ammunition links concealed in two compartments underneath sheets of metal secured with bolts in the backseat and trunk area of the vehicle. The total quantity of ammunition seized was approximately sixteen thousand four hundred (16,400) rounds of ammunition.

PENA was advised of his Miranda Statement of Rights by Homeland Security Investigations (HSI) Task Force Officer (TFO) Jaime Acosta in the Spanish language and witnessed by HSI Special Agent (SA) Gabrielle Moore. PENA acknowledged verbally and in writing he understood his rights and voluntarily agreed to speak with agents without a lawyer present.

During the interview, PENA initially denied all knowledge of how the ammunition got into the vehicle. PENA initially told agents he borrowed the van from an individual in Mexico, drove directly to a Walmart in the U.S. around 12:00 p.m., purchased a television with cash, and then drove to the Ysleta POE where he was encountered by CBPOs. Agents then presented PENA with a receipt from Walmart that had been found in the vehicle. The receipt, dated February 5, 2024, at approximately 11:00 a.m., reflected the purchase of a television and other items at Walmart with a Mastercard. Law Enforcement database queries reflected PENA entered the U.S. from Mexico on February 5, 2024, at approximately 12:08 p.m., approximately one hour after the transaction at Walmart. PENA then stated he did not purchase the television.

PENA admitted an individual offered him a job if he wanted to make money and that he was instructed to be careful. PENA admitted he crossed into the U.S. on February 5, 2024, went to a storage unit located in El Paso, Texas, removed the seats from the vehicle he was driving, loaded multiple boxes of ammunition from the storage unit into the compartments in the floor of

## AFFIDAVIT

the vehicle, and then drove to the POE. PENA stated the key to the storage unit was in his possession. PENA stated he knew it was illegal to transport firearms and ammunition to Mexico from the U.S. PENA stated he needed money and was getting paid $800 to smuggle the ammunition.

      Your affiant is aware that ammunition is controlled for export to Mexico on the Commerce Control List. Your affiant is also aware that a license, issued by the U.S. Department of Commerce, is required for the export of ammunition to Mexico. On February 5, 2024, SA Moore queried a law enforcement database and was unable to locate any information that suggested PENA possessed an export license relating to the export of ammunition.

_____
Gabrielle Moore, HSI Special Agent